UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

IN RE: ELLIOTT J. SCHUCHARDT )
)
)
)
) **FILED UNDER SEAL**
) No: 3:18-MC-39-PLR-HBG
)
)

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to Local Rule 83.7 and the Order [Doc. 7] of

the District Judge. Specifically, this case was initiated when Judge Bauknight, Bankruptcy Judge

for the Eastern District of Tennessee, requested that the District Judge initiate proceedings under

Local Rule 83.7 against Elliott Schuchardt ("Respondent"). The District Judge determined that

grounds exist for further investigation and ordered Respondent to respond within twenty-one (21)

days. The District Judge referred the matter to the undersigned for review and recommended

disposition pursuant to Local Rule 83.7(i).

The Court has reviewed the filings in this case. The undersigned finds that the record is

complete and that a hearing is not necessary and would not be beneficial to the Court in

recommending a disposition in this matter.[1] Accordingly, for the reasons explained below, the

---

[1] The Court notes that in Respondent's filings, he does not request a hearing. *See* E.D.
Tenn. L.R. 83.7(e)(4)(requiring that the response contain "a specific request for a hearing or a
statement specifically declining a hearing"). Further, Local Rule 83.7(i) states, "A disciplinary
hearing shall be held when the member under investigation has requested such a hearing in a timely
response or when the judge or judicial officer has determined that such a hearing is necessary for
the proper disposition of the charges." The Court construes Respondent's silence as a waiver of a
hearing. Moreover, the Court notes that the record contains the relevant documents necessary to
render a recommendation.

Court **RECOMMENDS** that Respondent be found to be in violation of the Federal Rules of Bankruptcy Procedure and the Tennessee Rules of Professional Conduct and that he be disciplined as set forth below. The Court further **RECOMMENDS** that Respondent's Motion to Vacate Prior Sanction Orders [**Doc. 11**] be **DENIED**.

## I. PROCEDURAL HISTORY

As an initial matter, the Court notes that in Judge Bauknight's most recent order [Doc. 3] dated June 20, 2018, (hereinafter, the "June 20 Order"), she details Respondent's alleged deficiencies in debtors' cases over the course of 2017. It appears to the undersigned, however, that the underlying issues that are more relevant to the instant proceeding began primarily in August 2017. Thus, while the Court has reviewed the alleged deficiencies in the handling of several debtors' cases as outlined in the June 20 Order, and will address them below, the Court will begin with the August 2017 proceeding.

### A. The Show Cause Hearing on August 10, 2017

Specifically, on August 10, 2017, Judge Bauknight conducted a show cause hearing on Respondent's allegation raised in open court on August 3, 2017, that the Trustee engaged in ex parte communications with the Court. [Doc. 9-5 at 4]. Prior to the show cause hearing, Judge Bauknight directed Respondent to file a statement signed under penalty of perjury, explaining the basis of his allegation of the ex parte contact. [*Id.*]. Respondent filed an affidavit [Doc. 9-7] in response to Judge Bauknight's order. In his affidavit, Respondent stated that Edward Shoemaker, Upright Law's former partner, discouraged Respondent from taking Upright Law's cases, stating

that Tiffany DiIorio, a staff attorney for the United States Trustee's Office (hereinafter, "Trustee"), would attack Respondent's reputation and get Respondent in trouble. [*Id.*].[2]

Further, in his affidavit, Respondent alleges that the Trustee began sending firm inquiry letters on as many cases as possible, which was an economic burden on Upright Law's clients. [*Id.*]. Respondent stated that the Trustee attempted to show that Respondent's firm was not obtaining wet signatures prior to filing documents. [*Id.*]. Respondent states that on April 11, 2017, he told the Trustee to review the elements of tortious interference with a contract, and then, eight days later, Judge Bauknight issued a *sua sponte* order threatening sanctions in a case for allegedly committing legal malpractice. [*Id.*]. Respondent states that there was no evidence on the record warranting such an inquiry and that the odd timing created an inference that the Trustee and/or Gwendolyn Kerney ("Kerney"), the Chapter 13 Trustee, might be discussing issues from Upright Law litigation with the court. [*Id.*].

In addition, Respondent states that the bankruptcy court issued *sua sponte* orders threatening to cut Upright Law's fees on all of the Chapter 7 cases that Respondent filed, despite there being no objection to the fees. [*Id.*]. Respondent states that during a show cause hearing on May 3, 2017, the bankruptcy court repeatedly attacked his competence to practice law. [*Id.*]. Respondent stated that the bankruptcy court inquired as to how he obtained signatures, even though the Trustee never objected to the signatures. [*Id.*]. Respondent concluded, "This question strongly suggested that DiIorigo has had some sort of ex parte conversation with the court concerning this issue." [*Id.*]. Respondent states that the question of signatures came up in two additional hearings, despite there being no objections by the Trustee. [*Id.*].

---

[2] The Court notes that Respondent's affidavit contains a number of allegations of improper conduct against Gwendolyn Kerney, the Chapter 13 Trustee. While the Court has reviewed the entirety of Respondent's affidavit, the Court will not summarize all the allegations against Kerney.

In his affidavit, Respondent claimed that on or about May 14, 2017, the Trustee called Maurice Guinn, Upright Law's local counsel, and "gleefully reported that the court was considering additional action against" Respondent on the basis of off-the-record conversations. [*Id.*]. Respondent states that while such conversations remain vague, apparently Kerney was claiming that Respondent threatened her in the hallway. [*Id.*]. Respondent concluded that the bankruptcy court created the impression that it was acting on behalf of the Trustee's office by repeatedly issuing *sua sponte* orders against Upright Law in the middle of highly-contested litigation. [*Id.*]. Respondent's affidavit details his issues with the Trustee in several bankruptcy matters and questions the timing of the bankruptcy court's *sua sponte* orders. [*Id.*]. Respondent concludes that the repeated *sua sponte* orders against Upright Law created the impression that the Court was acting on behalf of the Trustee's office. [*Id.*].

At the beginning of the August 10 hearing, Judge Bauknight stated that Respondent violated Rule 8.2(a) of the Tennessee Rules of Professional Conduct, finding that his statements regarding ex parte communications were made with reckless disregard as to the truth. [Doc. 9-5 at 5]. Judge Bauknight stated that the only sanction she intended to impose was for Respondent to request and pay for a transcript of the hearing, as well as other hearings. [*Id.*]. Judge Bauknight reviewed the allegations regarding her *sua sponte* orders relating to wet signatures. [*Id.* at 11]. Judge Bauknight stated that during her first year as a judge, she discovered that debtors in a case had not signed any of the documents that were filed with the court, and as a result, she became aware of the issue of wet signatures. [*Id.*]. Judge Bauknight explained that in three of the cases that Respondent listed in his affidavit, he did not appear as counsel of record. [*Id.* at 11-12]. In another case, Judge Bauknight explained that she inquired about the signature because Respondent failed to appear at a hearing but submitted documents that were dated the following day, and at the

4

time, Judge Bauknight believed Respondent was out of town. [*Id.* at 12]. Judge Bauknight explained that this raised a question of how Respondent could have met with his clients to obtain signatures. [*Id.*]. Finally, on the other case, Judge Bauknight explained that the debtor was in jail, which is why she inquired as to the signature. [*Id.*].

Judge Bauknight continued that another show cause order was issued when Respondent failed to appear at the confirmation hearing, which is her typical practice when an attorney fails to attend a hearing. [*Id.* at 13-14]. With respect to the show cause order relating to Respondent's fees, she explained that she issues show cause orders on cases for which debtors pay fees in excess of $1,200. [*Id.* 15-16]. Judge Bauknight explained that Respondent's contention that the Trustee did not object to his fees, ignores the court's independent duty to monitor and determine the reasonableness of the fees charged to debtors. [*Id.* at 16]. Judge Bauknight stated that in September 2016, she inquired as to the fees of an attorney who was unrelated to Upright Law or Respondent. [*Id.*]. Judge Bauknight denied that she attacked Respondent's competence to practice law and explained that she counseled him about his wrongful response that was filed in a case. [*Id.* at 16-17]. With respect to the ex parte conversations, Judge Bauknight stated that she will leave that inquiry to the discretion of the Board of Professional Responsibility but unequivocally denied that she had engaged in any ex parte communications with anyone. [*Id.* at 19]. She, however, allowed Respondent to proceed with his proof. [*Id.*].

During the hearing, Respondent accused Kerney of having ex parte conversations with the bankruptcy court in 2010. [*Id.*]. Respondent called Shoemaker to the stand, who testified that during his time with Upright Law, he could not recall any cases where the court raised questions about signatures, although he frequently produced signature pages at the 341 meetings. [*Id.* at 22-23]. Shoemaker further testified that Respondent inaccurately quoted him in the affidavit, and

Shoemaker clarified that he told Respondent not to make the same mistakes that he (Shoemaker) had made. [*Id.* at 29]. Shoemaker testified that the quotes attributed to him in Respondent's affidavit were "inconsistent with [his] whole recollection of what [he] was trying to do." [*Id.* at 31].

Respondent also called Maurice Guinn, a partner with Upright Law, as a witness. [*Id.* at 38]. Guinn testified that he had a conversation with the Trustee on May 18, 2017. [*Id.*]. Guinn stated that the Trustee called him as a courtesy to let him know a memorandum had been issued to the Marshals Service to escort Respondent out of the courthouse because Respondent had confronted Kerney on several occasions. [*Id.*]. Guinn did not recall telling Respondent that the memorandum had been issued by the Court. [*Id.* at 40]. Guinn did not recall telling Respondent that the bankruptcy court was planning to have the U.S. Marshals Service escort him. [*Id.* at 44]. Guinn testified that it may have been reasonable to infer that the bankruptcy court was involved. [*Id.*]. Respondent also called Kerney to the stand, who testified, "I've had no ex parte communication with the Court." [*Id.* at 51]. Kerney testified that after a hearing, Respondent "launched into a full-throttle tirade with derogatory comments about the unjustness of th[e] Court, the unjustness, the incorrectness of the rulings." [*Id.* at 62]. Kerney testified that she reported the Respondent's behavior to the clerk and the deputy clerk. [*Id.*].

Respondent also testified, and he denied Kerney's recollection of the incident in the hallway. [*Id.* at 66]. He further testified that there was an extra guard in the courtroom for the next hearing. [*Id.* at 67]. In addition, he stated that he had evidence that the Trustee engaged in ex parte communications concerning Upright Law cases and that he had a sufficient good-faith basis to make such allegations. [*Id.* at 73]. He testified that Guinn told him that the bankruptcy court was having off-the-record conversations. [*Id.* at 108].

After hearing the evidence, Judge Bauknight stated as follows:

> All right. For the record, I was appointed on November 10, 2014. [Respondent's] allegation that there were ex parte communications dating back to 2010, therefore is an allegation that now retired Judge Richard Stair engaged in ex parte communications with the chapter 13 trustee, an additional violation of Rule 8.2(a).
>
> Also, for the benefit and, hopefully, the convenience of the Board, I want to note the provisions of Rule 9003, which was referred by [Respondent], meaning, as he indicated today, he had researched it before he made the allegation in court on August 3rd. The relevance of Rule 9003 to this hearing and making this record relates to the question of the reasonableness of [Respondent's] allegations, both with regard to the situation here, and now today with regard to his allegations dating back to 2010. It is not in any way an indication that this court has had any discussions even as permitted under Rule 9003 with the United States Trustee's attorney, Ms. DiIorio, or with Ms. Kerney [Reads 9003] . . .
>
> After the hearing today, in addition to requiring [Respondent] to put this particular matter into the hands of the Board of Professional Responsibility, I will now require him to attend professionalism training of 20 hours within the next 6 months. However, going forward, I will also put Mr. Schuchardt on notice today that continued incivility in this court or in any papers filed by him before this court will also result in monetary sanctions, and potentially, suspension from the practice of law in this court.
>
> I am directing Mr. Schuchardt to request an expedited transcript of this hearing and the January 25 hearing in the *Smith* case. You must request these transcripts to be produced by the court reporter within seven days. If the court reporter cannot produce them within seven days, then whatever she can do –that's up to her—but you must request within seven days and pay the fees associated not only with the transcript, but with the expedited request.
>
> Also, you must request and pay for CD recordings of this hearing and the hearings on January 25, May 3rd, and August 3rd, as referenced in this record.
>
> And you must provide each document referenced by the court by docket number in this hearing today to the Board with a copy of the hearing transcripts and the CD recordings, as well as all exhibits entered into this record. The timing of this particularly important because, presumably, [Respondent] will continue to appear before

this court and interact with others against whom he has made very serious allegations, that is, I want this before the Board of Professional Responsibility without delay.

. . . I will also require [Respondent] to certify under penalty of perjury that you have complied with the order. Failure to comply with the order will result in a finding of civil contempt.

[Doc. 9-5 at 124-27].

**B.     The Agreed Order**

Subsequently, at a November 15 hearing, Judge Bauknight found that Respondent had not taken the Court's leniency at the August 10 hearing as an opportunity to change his ways, and on January 9, 2018, Judge Bauknight issued show cause orders, outlining Respondent's conduct and competency issues that concerned her. [Doc. 3 at 6]. In response to the show cause orders, Respondent and the Trustee agreed to resolve the issues raised therein.[3] The bankruptcy court addressed Respondent's and the Trustee's proposed agreement during a hearing on February 7, 2018.

During the February 7 hearing, Judge Bauknight inquired about adding three additional requirements to the parties' proposed agreement: (1) Respondent had to disgorge the fees that had been paid in the four cases that were filed leading up to the February 7 hearing; (2) Respondent had to withdraw as counsel of record for clients and sign agreed orders of substitution of counsel in pending cases; and (3) Respondent had to refer existing and prospective bankruptcy clients to other counsel during the moratorium period. [Doc. 3 at 10]. The bankruptcy court took a recess so Respondent had time to consider the additional terms. [*Id.*]. Thereafter, Respondent agreed,

---

[3] As Judge Bauknight later noted, "In the intervening five business days between the filing of the Joint Motion and the February 7 hearing, notwithstanding the proposed moratorium period, [Respondent] filed four Chapter 7 bankruptcy cases," including *In re Jason Edington and Linda C. Edington*, No. 3:18-bk-30299. [Doc. 3 at 8].

8

and Judge Bauknight entered the Agreed Order Resolving the Order to Show Cause Dated January 9, 2018 ("Agreed Order"). Specifically, the Agreed Order provided as follows:

1. [Respondent] shall dismiss, in accordance with the Bankruptcy Rules of Appellate Procedure and with prejudice, all appeals currently pending and arising from *In re Perry Lee Dupree*, No. 3:17-bk-32158, no later than February 12, 2018, at 5:00 p.m. [Respondent] shall file a certification in the *Perry Lee Dupree* case, showing compliance with this provision no later than February 19, 2019, at 5:00 P.M.

2. [Respondent] shall not file any further bankruptcy cases under any chapter of the Bankruptcy Code in the United states Bankruptcy Court for the Eastern District of Tennessee for a period of six (6) months from the date of the entry of this Order (the "Moratorium Period").

3. With the exception of the following four cases, [Respondent] shall not undertake new representation or continue to represent any party in any bankruptcy case or proceeding currently pending or to be filed with the Knoxville Division of the United States Bankruptcy Court for the Eastern District of Tennessee during the Moratorium Period:

    a.   *In re Holly Renee Holton*, No. 3:17-bk-30680,
    b.   *In re Perry Lee Dupree*, No. 3:17-bk-32158,
    c.   *In re Sandra T. Bennett*, No. 3:17-bk-33204, and
    d.   *In re Lawrence J. McFarland and Martha E. McFarland*, No. 3:17-bk-33413.

4. If, during the Moratorium Period, any prospective client/clients residing in the Knoxville Division of the United States Bankruptcy Court Eastern District of Tennessee, contact [Respondent] seeking representation in any bankruptcy case or proceeding currently pending or to be filed in the Knoxville Division of the United States Bankruptcy Court for the Eastern District of Tennessee, [Respondent] shall immediately refer any such prospective clients to another attorney/attorneys to properly handle such matter.

5. [Respondent] shall disgorge the fees paid to him, no later than February 12, 2018, by his clients in the following casers:

    a.   *In re Thomas W. McCloud and Destiny S. Chambers*, No. 3:18-bk-30232,

b. *In re Robert M. Becker and William J. Becker*, No. 3:18-bk-30297,

c. *In re Jason A. Edington and Linda C. Edington*, No. 3:18-bk-30299; and

d. *In re Fred Christopher Brickey*, No. 3:18-bk-30304.

(collectively, the "New Filed Cases"). [Respondent] shall not be permitted to continue representation of any of the clients in the New Filed Cases. Further, [Respondent] shall immediately refer the clients to each of the New Filed Cases to another attorney/attorneys that can assist them with handling their respective case. Should any of the clients in the New Filed Cases wish to continue the respective cases with a new attorney and not in a pro se capacity, [Respondent] shall agree to a substitution of counsel and shall execute any and all required documents to effectuate the substitution without the need for motion and hearing. [Respondent] shall file a certification of compliance with regards to the disgorgement portion of this provision in each of the New Filed Cases no later than February 19, 2018, at 5:00 P.M. EST.

6. At the expiration of the Moratorium Period, [Respondent] shall engage the services of a mentor attorney to monitor the first ten bankruptcy cases filed by him in the Knoxville Division of the Bankruptcy Court for the Eastern District of Tennessee and shall notify the United States Trustee of the mentor attorney and his/her contact information. [Respondent] shall pay the expenses of any mentor attorney. The united States Trustee will work with [respondent] to attempt to find a voluntary mentor attorney.

7. Any proceedings pending before the Tennessee Board of Professional Responsibility regarding [Respondent] shall not be affected by this Order.

8. The hearing currently scheduled on February 26, 2018, at 9:00 a.m. on the Show-Cause Order is hereby STRICKEN.

[Doc. 1]. Near the conclusion of the hearing, Judge Bauknight warned Respondent:

If after the moratorium, other issues arise, every issue that is in this Order to Show Cause will be back on the table – if other issues arise regarding your professionalism and civility, in particular, after the moratorium, then I may issue another show cause . . . I am not saying that all of these are resolved completely by this. It depends on your conduct when you return.

10

[Doc. 3 at 10]. Respondent responded that he had "no problem with that whatsoever." [*Id.*].

## C.      The Show Cause Hearing on June 7, 2018

Subsequently, in May 2018, Judge Bauknight became aware that Respondent had potentially violated the Agreed Order by consulting with and providing legal advice concerning two reaffirmation agreements in *In re Jason A. Edington and Linda C. Edington*, No. 3:18-bk-30299, and by consulting and preparing bankruptcy statements and schedules in *In re Tressa Lynne Webb*, No. 3:18-bk-31418. Judge Bauknight issued an order in the two cases outlining the potential violations and directed Respondent to appear before the bankruptcy court on June 7, 2018, to show cause why he should not be held in contempt for violating the Agreed Order.

Respondent filed a response to Judge Bauknight's show cause order, stating that the show cause order suggests that he provided free advice to Jason and Linda Edington (the "Edingtons") in connection with a reaffirmation agreement and that he provided free advice to Tressa Webb ("Webb"). Respondent insisted that he was not representing the above individuals. Respondent explained that the Agreed Order does not prevent him from practicing law or providing legal advice on an uncompensated basis. Respondent argued that the language of the Agreed Order prohibits him from "representing" parties in Judge Bauknight's courtroom for a limited period of time. Respondent stated that the Edingtons and Webb elected to appear pro se. Respondent stated that it is uncontested that he is not acting on behalf of either the Edingtons or Webb in any sort of representative capacity and that he had not entered into any sort of principal-agent relationship with any of these persons. Further, Respondent argued that federal law provides that any lay person can prepare a bankruptcy petition on an uncompensated basis.

Judge Bauknight conducted a hearing on June 7, 2018, wherein she outlined the false statements that Respondent made in his request that Judge Bauknight recuse in this matter (i.e.,

Judge Bauknight demanded that the state lawsuit be dismissed against Kerney, Judge Bauknight demanded that Respondent's appeals be dismissed, and that the Board of Professional Responsibility dismissed Respondent's matter). Further, during the hearing, the Court heard testimony from Webb. Webb testified that Respondent had represented her in previous bankruptcy cases, including a case that was filed in October 2017. [Doc. 5 at 41-49]. Webb received a letter in the mail regarding the 2017 bankruptcy case, informing her that the case was being dismissed. [*Id.* at 43]. After receiving the letter, Respondent told Webb that he would "honor the filing of her case" and that she could refile it, if she believed refiling was necessary. [*Id.* at 48]. Webb paid Respondent $1,200 for the October 2017 case, which included the filing fee. [*Id.*].

Webb testified that in May 2018, she realized that she needed to file again, so she sent Respondent a text about refiling her case, and Respondent texted her back asking what was the text regarding. [Doc. 5-1 at 1]. She visited Respondent at his office in April, and Respondent asked if she could wait until August to refile because he could not represent her until then. [*Id.* at 2]. Respondent told Webb that she could contact another attorney, and Webb reminded him that her other case was dismissed and that she had already paid Respondent. [*Id.*]. Respondent told Webb that he could redo the paperwork for her, and she provided Respondent with her paystubs. [*Id.* at 3]. Respondent told Webb that he would make arrangements to have someone else represent her. [*Id.*].

During the hearing, Respondent stipulated that he prepared the schedules for Webb. [*Id.* at 6]. Webb further testified that she provided him the information and that he completed the forms. [*Id.* at 8]. Webb testified that she believed she could ask Respondent any bankruptcy-related questions she might have, but she was unsure if he monitored her bankruptcy case. [*Id.* at 9]. Webb testified that Respondent did not accept any sort of payment in connection with the 2018

12

bankruptcy case. [*Id.* at 16]. Webb stated that she did not have the funds to retain a new lawyer in connection with the April filing and that she had to file for bankruptcy in order to keep her newly purchased van. [*Id.* at 16-17]. Webb testified that Respondent did not explain that there were pro bono opportunities available for attorneys, and he did not provide her with the names of attorneys who may have taken the case free of charge. [*Id.* at 17].

With respect to the Edingtons, Respondent testified that he filed their bankruptcy case in February 2018. [*Id.* at 26]. Respondent testified that the Agreed Order required him to disgorge the fees paid by the Edingtons and that he complied, but he did not disgorge the filing fee. [*Id.* at 28]. Respondent testified that the Agreed Order precluded him from continuing to represent the Edingtons, and he filed a motion to withdraw from representing them. [*Id.*]. The Agreed Order also required Respondent to refer the Edingtons to another attorney. [*Id.* at 29]. Respondent testified that he did not provide the names of other attorneys to the Edingtons because Mr. Edington did not want to move forward with another attorney. [*Id.*]. Respondent told the Edingtons that he could no longer assist or represent them. [*Id.* at 30].

Following Respondent's suspension and withdrawal from the Edingtons' case, they contacted Respondent regarding reaffirmation agreements. [*Id.* at 31]. Respondent told them that if they wanted to be represented, they should hire new counsel, but Mr. Edington said that he did not want representation but legal advice. [*Id.* at 31-32]. Respondent later met with Mr. Edington to review the reaffirmation agreements. [*Id.* at 32]. Respondent stipulated that he provided assistance to Mr. Edington and testified that he completed the Edingtons' reaffirmation agreements. [*Id.* at 33-39].

After the conclusion of the evidence, Respondent argued that he provided free legal advice to the above individuals, but he did not represent them. Judge Bauknight found otherwise, citing

13

to the Tennessee Rules of Professional Conduct and Tennessee Code Annotated § 23-3-101. Judge Bauknight found that Respondent violated the Agreed Order by the following: (1) preparing bankruptcy documents, (2) promising Webb that he would arrange for someone to appear with her at the creditors' meeting; (3) advising her after her case was filed; (4) asking Webb if she could wait to refile after his moratorium period expired; and (5) providing advice to the Edingtons regarding their reaffirmation agreements. [*Id.* at 46-47]. Judge Bauknight continued that Respondent's testimony characterizing the Edingtons and Webb as "friends" was intentionally misleading to the court. [*Id.* at 47]. She also found that Respondent acted incompetently when representing Webb in her 2017 case when he did not follow up to assist with the reaffirmation agreement that she and her husband wanted to secure with the lienholder of their van. [*Id.* at 48].

Judge Bauknight found Respondent in contempt of the Agreed Order and imposed the following:

> 1. Sanction of $2,000 to the Clerk of the Bankruptcy Court;
>
> 2. The provisions of the August 8 order will be extended 45 days;
>
> 3. Respondent shall pay the sum of $250 to Webb to compensate her for mileage, parking, and other losses incurred; and
>
> 4. Reinstatement of the January 9 show cause order.

Judge Bauknight set a show cause hearing for July 27, 2018, and stated that she would issue an additional show cause order concerning whether Respondent's conduct in representing the Edingtons and Webb in violation of the Agreed Order also constituted the unauthorized practice of law, as well as whether the ghostwriting of the bankruptcy paperwork violated Federal Rule of Bankruptcy Procedure 9011 and/or Tennessee Rules of Professional Conduct 3.3, 4.1, and 8.4, and whether Respondent should be sanctioned under 28 U.S.C. § 1927 for his conduct before the Court in relation to the June 7 hearing. [*Id.* at 49-50].

On June 20, 2018, Judge Bauknight issued a thirty-eight (38) page order [Doc. 3], explaining the procedural history of this matter and the deficiencies in Respondent's cases over the previous year. Judge Bauknight set a show cause hearing for July 27, 2018, and directed as follows:

> 1. Respondent shall show cause as to why he should not be sanctioned further, including but not limited to suspension from filing cases or representing clients before the Northern Division of the United States Bankruptcy Court for the Eastern District of Tennessee until further order of the Court after the ultimate conclusion of the pending Petition for Discipline filed by the Tennessee Board of Professional Responsibility on June 6, 2018,[4] for the following actions:
>
>> (i) Violations of sections 1.1, 1.3, 3.1, 3.3, 3.4, 4.1, 8.2 and 8.4 of the Tennessee Rules of Professional Conduct for the conduct and actions set forth in the Order;
>>
>> (ii) Violations of Federal Rule of Bankruptcy Procedure 9011 for his conduct in the *Griffith, Ash, Venuk, Annable, Sensaboy, Mayes, Collett, Dupree, Edington, and T. Webb* cases as set forth in the Order; and
>>
>> (iii) Engaging in the unauthorized practice of law in the *Edingtons* and *Webb* cases, in violation of Tennessee Code Annotated § 23-3-103(a);
>
> (2) Respondent shall explain why he should not be required to satisfy personally the costs, expense, and attorney's fees reasonably incurred by the United States Trustee because of his conduct pursuant to 28 U.S.C. § 1927; and
>
> (3) Debtor Perry Lee Dupree shall also appear at the July 27, 2018, show cause hearing to answer the Court's questioning concerning his signatures and other matters of concern outlined above.

---

[4] The Disciplinary Counsel of the Board of Professional Responsibility filed a Petition for Discipline on June 6, 2018, alleging that Respondent had engaged in unethical conduct in violation of the Tennessee Rules of Civil Professional Conduct, including Rules 1.1, 1.3, 1.5, 3.1, 3.3, 3.4, 3.5, 4.1, 8.2, and 8.4. [Doc. 2].

15

Prior to the July 27 show cause hearing, Judge Bauknight requested that the District Court initiate proceedings under Local Rule 83.7.  [Doc. 4].

## II.    THE PLEADINGS

The Court will first begin with Judge Bauknight's Letter (hereinafter, "Complaint") that initiated this case and then summarize the Response thereto.

### A.    Complaint

As mentioned above, the Complaint in this case was filed by Judge Bauknight against Respondent.  Judge Bauknight alleges that Respondent's misconduct occurred before her in 2017, and she ordered him to self-report his conduct to the Tennessee Board of Professional Responsibility ("Board").  The Board concluded its investigation and issued a Petition for Discipline charging Respondent with violations of ten Rules of Professional Conduct.[5]  Judge Bauknight states that after attempts at progressive sanctions, it became clear that Respondent was continuing to engage in unprofessional conduct, having a serious and negative impact on the efficient and effective operation of the bankruptcy system.  Judge Bauknight accuses Respondent of exhibiting incompetency, which was harming his clients.

Judge Bauknight states that on January 9, 2018, she issued an order in seventeen (17) cases, requiring Respondent to show cause as to why he should not be sanctioned for his unprofessional conduct.  Respondent and the Trustee proposed a resolution of the issues raised in the January 9 show cause order, and Judge Bauknight accepted this proposal, which included a six-month moratorium on Respondent from representing bankruptcy clients.

Judge Bauknight states that in May 2018, she became aware that Respondent had possibly violated the Agreed Order, so she scheduled a show-cause contempt hearing for June 7, 2018.

---

[5] *See supra* note 4.

Prior to the hearing, Respondent requested that she recuse, raising scurrilous and false allegations against her in violation of Tennessee Rules of Professional Conduct 3.3 and 8.2(a)(1).

At the June 7 hearing, Judge Bauknight held Respondent in contempt. As a result, she reinstated and supplemented the January 9 show-cause order, among other sanctions. Judge Bauknight states that she is prepared to proceed further with sanctions but believes it would be more efficient if the Court initiated disciplinary proceedings under Local Rule 83.7 because Respondent repeatedly challenges her impartiality.

### B.    Response

Respondent filed a timely Response [Doc. 9] as directed by the District Judge and subsequently filed a Motion to Vacate [Doc. 11] and a Supplementary Response [Doc. 13]. In his Response, Respondent details his educational background and professional experience. Respondent states that over the past twenty-five (25) years, he has worked with hundreds of clients and that during his career, no client has ever filed a complaint against him with any court or licensing board in any state. He submits that he has twenty-five (25) years of experience in practicing bankruptcy law and has also established a reputation as a civil liberties attorney in the United States.

Respondent states that on January 16, 2017, he became a local partner for Upright Law, in Knoxville, Tennessee. Respondent explains that Upright Law advertised its business on the internet and that after a customer retained the firm, Upright Law directed the new client to Respondent for fulfillment of legal services. The entire process was supported by an extensive back-office system located in Chicago, Illinois. Respondent states that Upright Law was responsible for marketing, collecting the fee, responding to client questions concerning the status of the case, and maintaining a case-filing system in the internet cloud.

17

Respondent states that prior to accepting the position, Upright Law's managing partner, Keven Chern ("Chern"), warned Respondent about the pending litigation against the firm. Chern warned Respondent that the Trustee and Kerney would target Respondent and attempt to portray Upright Law as incompetent and unethical. Respondent states that Edward Shoemaker, a former local partner with Upright Law, also warned him not to accept representation because the Trustee would demand amendments in order to create an appearance of incompetence, which would also make representation unprofitable because of the cost of implementing the amendments. Respondent states that he accepted the position at Upright Law, despite such warnings.

Respondent states that he began accepting cases in late January 2017 and that almost immediately, the Trustee began sending inquiry letters on a large percentage of Upright Law's cases. Respondent states that over a fifteen (15) year period, he had received a total of two inquiry letters. Respondent states that the inquiry letters posed an economic burden and that his clients were severely burdened by such requests. Respondent states that later, Maurice Guinn, local counsel for Upright Law, learned from the Trustee that Kerney told Judge Bauknight in an ex parte conversation that Respondent created a disturbance in the hallway. Guinn relayed this information to Chern, who then told Respondent. Respondent states that Kerney's allegations about creating a disturbance were false and that the video footage would establish the falsity of Kerney's allegations, but Judge Bauknight declined Respondent's request to obtain the footage.

Respondent states that on April 28, 2017, Judge Bauknight issued orders on her own initiative, questioning the legal fees of Upright Law. Respondent states that Judge Bauknight's orders created a clear impression that she was biased against Upright Law and Respondent. Respondent states that such orders were troubling because they were entered days after Kerney's

18

improper conversation with Judge Bauknight. Respondent states that Judge Bauknight systematically reduced Upright Law's fees on Chapter 7 cases well below the fair market value.

Respondent states that subsequently, at a hearing on August 20, 2017, Kerney announced in court that Respondent had created a disturbance in the hallway after a hearing and that such disturbance was disrespectful, if not threatening. Respondent claims that Kerney's allegations are false. Respondent states that Kerney repeated such false accusations to the Disciplinary Board of the Supreme Court of Tennessee. At a hearing on Judge Bauknight's *sua sponte* orders concerning the amount of Upright Law's fees on August 3, 2017, Respondent announced that Upright Law was withdrawing from the Knoxville market given the fees allowed by Judge Bauknight. Respondent also claimed on the record that that was an appearance that the firm's adversaries were discussing Upright Law's cases with Judge Bauknight on an ex parte basis. Respondent states that Judge Bauknight issued an order requiring Respondent to provide evidence in support of his allegation, and on August 10, 2017, Judge Bauknight held a hearing on the issue. Judge Bauknight ultimately sanctioned Respondent for his accusations. Respondent states that Kerney continued her attacks on Respondent and that Judge Bauknight denied his fee request on a case, even though there was no evidence of unprofessional behavior on the record.

Respondent states that Kerney's allegations relating to the disturbance resulted in an inquiry from the Disciplinary Board of the Supreme Court of Tennessee. Respondent moved the court to order the disclosure of the video footage, but Judge Bauknight denied this request. Respondent states that he filed a state lawsuit against Kerney for slander. Afterwards, Respondent alleges that Judge Bauknight issued show cause orders in seventeen (17) bankruptcy cases, attacking Respondent's license to practice law. Respondent requested that Judge Bauknight recuse, and she refused to immediately rule on the issue of recusal.

19

Respondent states that on February 8, 2018, he agreed to settle the orders to show cause. Respondent alleges that Judge Bauknight demanded that he dismiss the defamation suit against Kerney and that she insisted Respondent also dismiss his appeals against two of her own orders (i.e., the appeal challenging Judge Bauknight's denial of the fee request and the denial of the video footage). Respondent alleges that Judge Bauknight also demanded that Respondent refrain from filing cases in her courtroom for a six-month period. Respondent states that this settlement was clearly improper.

Respondent further argues that it is proper to vacate Judge Bauknight's sanctions order against him because there is an appearance that Judge Bauknight commenced this case for improper purposes. Specifically, Respondent states that Judge Bauknight has ordered three sanction orders against him: (1) the sanctions in *In re Jennifer Roberts*, No. 3:17-bk-31543, on August 10, 2017; (2) the sanctions entered on February 8, 2018, in seventeen (17) bankruptcy cases; and (3) the sanctions entered on June 10, 2018, in *In re Tressa Webb*, No. 3:18-BK-31418 and *In re Jason and Linda Eddington*, No. 3:18-bk-30299. Respondent requests that the Court vacate all three sanction orders pursuant to Federal Rule of Civil Procedure 60(b). Respondent has filed a separate Motion to Vacate [Doc. 11], which also requests that the Court vacate the three sanctions orders issued by Judge Bauknight.

Respondent states that it is proper for the Court to dismiss the show cause in this case. Respondent states that he has practiced law for twenty-five (25) years without a single complaint from a client. Respondent states that there are no allegations of fraud, theft, malfeasance, commingling of client funds, or malpractice in these cases. Respondent further states that there is no basis in law or fact for any of Judge Bauknight's allegations.

Finally, Respondent filed a Supplementary Response [Doc. 13], stating that one of the issues in this case is whether he violated the Agreed Order. Respondent states that on June 7, 2018, Judge Bauknight entered an order finding that Respondent violated the Agreed Order, which has been appealed. Respondent states that Judge Bauknight was incorrect in finding that he had violated the Agreed Order by representing clients and practicing law. Respondent states that two days after filing his appeal, the Trustee and Kerney announced a settlement in the Upright Law litigation. Pursuant to the terms of the settlement, which were disclosed on July 31, 2018, Kerney will receive payment of $200,000 from Upright Law.

## III. ANALYSIS

The Court has considered the record in this case, and after careful review, the Court **RECOMMENDS** that Respondent be found in violation of the Federal Rules of Bankruptcy Procedure and the Tennessee Rules of Professional Conduct and that he be disciplined for such conduct.

A number of courts have explained that a "federal court has the power to control admission to its bar and to discipline attorneys who appear before it." *In re Cowan*, 620 F. Supp. 2d 867 (2009) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)) (other citations omitted). The Local Rules of this Court provide, "The minimum standards of professional conduct before this Court include the Rules of Professional Conduct adopted by the Supreme Court of Tennessee insofar as they relate to matters within the jurisdiction of this Court." E.D. Tenn. L.R. 83.6.

It is well established that courts have "an inherent authority to suspend or disbar lawyers." *In re Synder*, 472 U.S. 634, 643 (1985) (citations omitted). "This inherent power derives from the lawyer's role as an officer of the court which granted admission." *Id.* (citations omitted). Further, Local Rule 83.7 states that, "The Court may impose discipline on any member of its bar who has

violated the Rules of Professional Conduct as adopted by the Supreme Court of Tennessee, or has engaged in unethical conduct tending to bring the Court or the bar into disrepute." In addition, Local Rule 83.7(i)(4), "The respondent's violation of the Rules of Professional Conduct or rule or orders of the court or the respondent's engagement in unethical conduct tending to bring the Court or the bar into disrepute shall be proven by clear and convincing evidence."

With the above guidance in mind, the Court now turns to the present matter. After considering the transcripts, the orders, and Respondent's filings, the Court finds, by clear and convincing evidence, that Respondent has engaged in serious, unethical conduct before the bankruptcy court, and now this Court, in violation of Federal Rule of Bankruptcy Procedure 9011 and the Tennessee Rules of Professional Conduct. The record is clear that Judge Bauknight utilized progressive discipline against Respondent for his misconduct, and despite her leniency, Respondent continued his verbal and reckless attacks against Judge Bauknight and violated the Agreed Order. The instant Response buttresses Judge Bauknight's claims of misconduct. For instance, as explained in more detail below, the Respondent continues to claim Judge Bauknight engaged in ex parte conversations without offering a scintilla of credible evidence in support of his accusations. Instead of taking responsibility for his misconduct, Respondent attempts to justify them or cast blame elsewhere. The record in this matter completely refutes Respondent's claims.

The Court will begin with Respondent's claim that Judge Bauknight engaged in ex parte communications with Kerney. The Court will next address Respondent's violation of the Agreed Order. Third, the Court will address Respondent's conduct that resulted in the June 20 show cause order. Finally, the Court will recommend discipline for Respondent's conduct.

22

## A.    Ex Parte Communications

Respondent alleges that Judge Bauknight engaged in ex parte communications with the Trustee.  He has repeatedly made this accusation by way of (1) oral statements in the bankruptcy court, (2) an affidavit wherein he swore under penalty of perjury he was telling the truth, (3) multiple filings in the bankruptcy court, and (4) now the instant Response.  First, the Court must emphasize that Respondent has not offered any credible evidence of his accusation.  Instead, he states that Judge Bauknight issued *sua sponte* orders challenging the legal fees of Upright Law and that the timing of such orders "created the clear impression" that Judge Bauknight was biased against Upright Law.  He also states that such orders were issued days after Kerney's "alleged improper conversation with Judge Bauknight concerning" Respondent.    [Doc. 9 at 17]. Respondent has not corroborated his inferences, and the Court finds such inferences are made with reckless disregard as to their truth in violation of Tennessee Rule of Professional Conduct 8.2. Specifically, 8.2 provides as follows:

> (a) A lawyer shall not make a statement that the lawyer knows to be false or that is made with reckless disregard as to its truth or falsity concerning the qualifications or integrity of the following persons:

> (1) a judge.

It appears to the Court that Respondent's real issue is that Judge Bauknight reduced his fees.  His recourse, however, was to appeal her decision; instead, he chose to accuse her of inappropriate conduct.  At the August 10, 2017 show cause hearing, Judge Bauknight explained to Respondent that the court has an independent duty to review all fee applications.    Judge Bauknight's explanation is fully supported by law.  As the Bankruptcy Court for the Middle District of Tennessee explained:

Case 3:18-mc-00039-TRM-JEM    Document 14    Filed 08/30/19    Page 23 of 44
PageID #: 1011

> Section 330 charges the Court with an independent duty to review all fee applications presented in all bankruptcy cases, no matter the chapter of relief. This review is to ensure that the requested fees are reasonable, necessary, and justified. *In re Wildman*, 72 B.R. 700, 705 (Bankr. N.D. Ill. 1987). The Court's review is essential to ensure that estates are administered economically. *In re Areaco Inv. Co., Inc.*, 152 B.R. 597 (Bankr. E.D. Mo. 1993). The Court's duty is unaffected by the existence of an objection to a fee application. The Court must evaluate any fee request to determine if it is reasonable.

*In re Peterson*, 566 B.R. 179, 188 (Bankr. M.D. Tenn. 2017). The fact that Judge Bauknight issued *sua sponte* orders regarding legal fees is not concerning to the undersigned as such orders are part of her duties. Further, as mentioned above, Respondent refers to Judge Bauknight's *sua sponte* orders as troubling because they were issued days after Kerney's alleged improper conversations. Again, Respondent has offered no credible evidence to support that such improper conversations actually occurred.

As summarized above, Judge Bauknight conducted a hearing and allowed Respondent an opportunity to present proof of such improper conversations. Respondent was not able to offer any credible proof. Respondent stated that he learned about the improper conversations from Guinn, but Guinn testified that he did not recall telling Respondent that the bankruptcy court was planning to have the U.S. Marshals Service escort him out.[6] Respondent states that during the hearing, he placed evidence on the record showing that he had a reasonable basis for making the objection. Respondent does not explain what evidence he offered. The Court presumes he is relying on the testimony of Guinn, who stated it may have been reasonable for Respondent to infer the bankruptcy court was involved. During the hearing, however, Guinn testified that he did not

---

[6] The Court notes that in his Response, Respondent states that Kerney told Judge Bauknight that he created a disturbance in the hallway. Respondent states that he learned this information from Chern, who received the information from Guinn, who received the information from the Trustee, who presumably learned the information from Kerney. [Doc. 9 at 15]. The Court highlights these alleged conversations to show how Respondent's assertion is simply not credible.

24

recall telling Respondent that the court was involved. Further, after such testimony, Respondent continued his allegations. The Court finds such *repeated* accusations, without any corroboration, a violation of Tennessee Rule of Professional Conduct 8.2. Accordingly, the Court finds Respondent made accusations against Judge Bauknight with reckless disregard as to their truth or falsity in violation of Rule 8.2.

### B. Violations of the Agreed Order

As mentioned above, Judge Bauknight found that Respondent had violated the Agreed Order by representing Webb and the Edingtons. Judge Bauknight found Respondent in contempt and ordered him to pay $1,000 as a sanction in each case, and Judge Bauknight extended the moratorium period. Respondent maintains that he does not represent the above individuals. Respondent acknowledges that he provided uncompensated legal advice to these individuals. Further, Respondent states that he voluntarily disclosed such information to the Trustee because "Judge Bauknight had made it impossible for him to represent these former clients." [Doc. 9 at 36].[7] Finally, Respondent argues that there was no consideration with respect to the Agreed Order, explaining that the Agreed Order was entirely-one sided, with no benefit to Respondent.

As the Court noted above, Judge Bauknight issued a show cause order on January 9 in seventeen (17) bankruptcy cases and set a hearing for February 26, 2018. On January 30, 2018, the Trustee and Respondent filed a joint ex parte motion for emergency/expedited status conference in order to present to Judge Bauknight a proposal to resolve the issues raised in the

---

[7] The Court notes that Respondent's assistance to Webb came to light when the bankruptcy court noticed that Webb's documents had been generated by a software program that Respondent used in all his cases. [Doc. 3 at 31]. At a hearing, Webb acknowledged that Respondent had prepared her bankruptcy paperwork. With respect to the Edingtons, Respondent sent the Trustee an email stating that his "client," Jason Edington had a hearing on a reaffirmation agreement and that Respondent was going "to be present in the courtroom, in case [Jason Edington] had questions," but Respondent needed to go out of town. [Doc. 13-14].

25

January 9 show cause order.[8]  Judge Bauknight proposed additional conditions, which Respondent agreed to, and the court entered the Agreed Order.  Specifically, the Agreed Order, in relevant part, provides that Respondent shall not file any further bankruptcy cases for six months and shall not take any new representation or continue to represent any party in any bankruptcy proceeding currently pending or to be filed in the Knoxville Division of the United States Bankruptcy Court of the Eastern District of Tennessee during the Moratorium Period.  Further, the Agreed Order states that Respondent must refer his clients or any prospective client seeking representation to another attorney.

Respondent argues that the above Agreed Order did not have consideration and was entirely one-sided.  Respondent is mistaken.  A court order is not a contract subject to the requirement of consideration.  Even if it were, the Court disagrees with Respondent's position.  As a result of the Trustee's and Respondent's agreement, the show cause orders issued on January 9 to Respondent were resolved.  Further, Respondent accuses Judge Bauknight of making it impossible for him to represent former clients, but Respondent *voluntarily* entered into the Agreed Order.  Respondent's position simply highlights his refusal to acknowledge his misconduct.  Respondent states that Judge Bauknight expressly reserved the right to raise all of the issues in the January 9 show cause orders in the future.  Specifically, Judge Bauknight warned Respondent at the February 7 hearing that after the moratorium, if other issues arise, she may issue another show cause order and every issue in the January 9 order would be back on the table.  Again, Respondent is mistaken in his attempt to treat the Agreed Order as though it is a contract.  Further, a judge has a responsibility to protect the integrity of the court system.  *Wolters v. Kluwer Fin. Servs. Inc. v.*

---

[8] The Court notes that in the intervening five business days between the filing of the joint motion and the February 7 hearing, Respondent filed four bankruptcy cases, including one case that was filed about two hours before the February 7 hearing.  [Doc. 3 at 8].  The Court faults the Respondent for this conduct, given that the joint motion proposed a moratorium period.

*Scivantage*, 525 F. Supp. 2d 448, 449-50 (S.D. N.Y. 2007) ("When such lapses occur in federal courts, it is not only our prerogative but our responsibility to address them and, where appropriate, impose sanctions."). The Court does not find that Judge Bauknight's conduct was inappropriate. In addition, as explained below, Respondent violated the Agreed Order by representing Webb and the Edingtons.

Respondent acknowledges that he completed bankruptcy forms for Webb and completed the Edingtons' reaffirmation agreements. Judge Bauknight found that Respondent violated the Agreed Order, and the undersigned agrees with such finding for the reasons Judge Bauknight articulated at the hearing. *See* [Doc. 5-1 at 42-45]. Specifically, as the bankruptcy court has explicitly stated, "Plugging in solicited information for questionnaires and personal interviews to a pre-packaged bankruptcy program constitutes the . . . practice of law." *In re Rose*, 314 B.R. 663, 706 (Bankr. E.D. Tenn. 2004) (citation omitted). Further, Tennessee Code Annotated § 23-3-101(c) defines "practice of law" as "appearance as an advocate in a representative capacity or the drawing of papers, pleadings or documents or the performance of any act in such capacity in connection with proceedings pending or prospective before any court." *See also* Tenn. Rules Prof'l Conduct, preamble ¶¶ 2-4. When Respondent completed the bankruptcy forms for the Edingtons and Webb, he was in violation of the Agreed Order. Further, Respondent was also required to refer any clients or prospective clients to other attorneys, which he admittedly did not do. Oddly, he even contacted the Trustee regarding the Edingtons' case, stating that he intended to be in the courtroom for his "client" during the hearing but needed to go out of town. Accordingly, the Court finds Respondent violated the Agreed Order by representing the Edingtons and Webb in their bankruptcy proceedings and he did not refer them to another attorney as required.

27

Further, as part of the June 20 show cause order, Judge Bauknight ordered Respondent to show cause why his above conduct was not in violation of Federal Rule of Bankruptcy Procedure 9011, Tennessee Rules of Professional Conduct 3.3, 3.4, and 8.3, and whether such conduct constitutes authorized practice of law.

Respondent argues that he was not practicing law because the bankruptcy code states that any person may prepare a bankruptcy petition and such conduct is not legal practice, citing 11 U.S.C. § 110.[9]  Respondent further contends that he does not represent Webb in her most recent bankruptcy matter and that Judge Bauknight's orders violate his right to free speech under the First Amendment of the United States Constitution.  Respondent disputes he violated any rules, and he submits that he voluntarily disclosed the fact that he provided assistance to the Edingtons in connection with the reaffirmation agreements.

Federal Rule of Bankruptcy Procedure 9011 is akin to Rule 11 of the Federal Rules of Civil Procedure.  Specifically, Rule 9011(a) states, in relevant part, "Every petition, pleading, written motion, and other paper, except a list, schedule, or statement, or amendments thereto, shall be signed by at least one attorney of record in the attorney's individual name. A party who is not represented by an attorney shall sign all papers."   Tennessee Rule of Professional Conduct 3.3 requires candor toward the court, Rule 3.4 requires fairness to the opposing party and his/her counsel, and Rule 8.4 outlines professional misconduct.  Finally, Tennessee Code Annotated § 23-3-103(a) is a criminal statute that prohibits the unauthorized practice law.

In analyzing this issue, the Court finds the decision in *In re Smith* instructive.  Nos., 12-11603, 12-11857, 2013 WL 1092059 (Bankr. E.D. Tenn. Jan. 20, 2013).  In *Smith*, the attorney

---

[9] Respondent submits that he has appealed Judge Bauknight's sanctions issued in the Edingtons' case and Webb's case.  [Doc. 9 at 35].

was suspended but later reinstated by the Tennessee Supreme Court. *Id.* at *3. She neglected, however, to seek reinstatement to this Court. *Id.* at *4. She later learned that she could not file documents electronically in the bankruptcy court, so she prepared debtors' documents and indicated on such documents that the debtors were not represented by counsel. *Id.* at *5.

The bankruptcy court held that the attorney committed ethical violations, including a violation of Rule 9011, a breach of the attorney's duties of candor to the tribunal, and an act of dishonesty. *Id.* at *2. In its decision, the bankruptcy noted that "[p]rior to 2011, the federal courts were almost unanimous in their condemnation of attorneys and litigants who failed to disclose the participation of an attorney in the preparation of pleadings filed with the court." *Id.* at * 14 (citation omitted).[10] The court continued, "Like the majority of federal courts and appellate courts, the bankruptcy courts have taken a dim view of ghostwriting." *Id.* at *15. The court looked to the Tennessee Board of Professional Responsibility for guidance. Specifically, Tennessee Formal Ethics Op. 2007-F-153, in discussing Rule 8.4, provides as follows:

> Thus, an attorney in Tennessee may not engage in extensive undisclosed participation in litigation in behalf of a pro se litigant as doing so permits and enables the false appearance of being without substantial professional assistance.

*In re Smith*, 2013 WL 1092059, at *20 (quoting Board of Prof'l Responsibility, Formal Ethics Op. 2007-F-153).

The court noted that the Board further explained:

> This prohibition does not extend to providing undisclosed assistance to a truly pro se litigant. Thus, an attorney may prepare a leading pleading including, but not limited to, a complaint, or demand for arbitration, request for reconsideration or other document required to toll a statute of limitations, administrative deadline or other

---

[10] The court explained that "in 2011, the Second Circuit Court of Appeals broke with the long line of federal cases which had found nondisclosure of participation and ghostwriting to be ethical violations." *In re Smith*, 2013 WL 1092059, at *17 (citing *In re Fengling Liu*, 664 F.3d 367 (2d Cir. 2011)).

29

> proscriptive rule, so long as the attorney does not continue undisclosed assistance of the pro se litigant. The attorney should be allowed, in such circumstances, to elect to have the attorney's assistance disclosed or remain undisclosed. To require disclosure for such limited, although important, assistance would tend to discourage the assistance of litigants for the protection of the litigants' legal rights. Such limited assistance is not deemed to be in violation of RPC 8.4(c).

*Id.* (quoting Board of Prol'f Responsibility, Formal Ethics Op. 2007-F-153).

The court continued that the above guidance does not allow an attorney to assistant a pro se litigant "where doing so creates the false impression that the litigant is without substantial legal assistance." *Id.* (quoting Board of Prol'f Responsibility, Formal Ethics Op. 2007-F-153). The court further explained that misrepresenting attorney participation in the bankruptcy setting is material because "[t]he provisions of the Bankruptcy Code make disclosure of attorney participation material to a bankruptcy case." *Id.* at *21. The court concluded:

> These bankruptcy administrative and statutory requirements related to the attorney-client relationship, coupled with the federal courts' longstanding concerns about the impact of ghostwriting on fairness, candor, and compliance with the signature requirement of Rule 11 of the Federal Rules of Civil Procedure, lead this court to conclude that attorney participation in the preparation of a bankruptcy pleading is a material fact. It is a fact which is relevant to the proper administration of the bankruptcy law, and it is a fact that a bankruptcy judge would consider important in assessing or determining how to proceed. As such, it is a material representation under the TRPC. Any knowing misrepresentation regarding the level of attorney participation is a violation of an attorney's duty of candor to the tribunal and is a violation of TRPC 8.4(c).

*Id.* at *22.

Finally, with respect to Rule 9011, the court held as follows:

> [T]he court notes that the rule requires that a pleading be signed by at least one attorney in the individual attorney's name. Fed. R. Bankr.P. 9011(a). A party who is not represented by an attorney shall sign all papers. *Id.* In this case the petition was signed by the debtors although the court has found that they were represented by

30

counsel. Therefore, they were not the appropriate parties to sign the petition to comply with Rule 9011.

*Id.*

In the present matter, the undersigned finds that Respondent completed the bankruptcy forms for both Webb and the Edingtons without disclosing that he had completed such forms, because the Agreed Order prohibited him from doing so. Instead of abiding by the Agreed Order and referring these individuals to other attorneys for assistance, he completed their paperwork without disclosing his involvement in order to circumvent the Agreed Order. Further, with respect to the Edingtons' case, he checked boxes on their paperwork stating that they were not represented in negotiating or during the course of negotiating the reaffirmation agreements. Respondent also acknowledged that he possibly altered the form drafted by the creditors.

Accordingly, the Court finds the above conduct a violation of an attorney's duty of candor to the tribunal and a violation of Rule 8.4(c). *See In re Smith*, 2013 WL 1092059, at *2 (finding that "nondisclosure of an attorney's participation is a breach of the attorney's duties of candor to the tribunal" and that "a misrepresentation about attorney participation is a material misrepresentation in a bankruptcy proceeding"). Finally, and for similar reasons, the Court finds that Respondent violated Rule 9011 with respect to both cases. *See id.* at *22 ("In this case the petition was signed by the debtors although the court has found that they were represented by counsel. Therefore, they were not the appropriate parties to sign the petition to comply with Rule 9011.").

### C.     Show Cause Order Dated June 20, 2018

As mentioned above, Judge Bauknight issued a detailed, thirty-eight (38) page order explaining Respondent's alleged deficiencies over the past year in a number of bankruptcy cases.[11] Respondent has responded to each of Judge Bauknight's allegations.

As an initial matter, the Court notes that a number of complaints involve Respondent's failure to follow procedural rules or not acting in a timely fashion.   As explained below, some acts constitute violations of the Tennessee Rules of Professional Conduct, while others do not.   The problem, however, is that when considering Respondent's conduct over the course of a few months, several, troubling patterns emerge.   For instance, Respondent has missed several court hearings but insists that his presence was not required.   He does not respond to motions, although his responses would certainly expedite his clients' cases.   On several occasions, he publicly filed his clients' personal identifying information.   Respondent's repeated mistakes are not within the spirit of Tennessee Rule of Professional Conduct 1.1, which provides, "A lawyer shall provide competent representation to a client.   Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonable necessary for the representation." Again, while not every mistake constitutes a violation, the Court has considered his conduct as a whole and, as explained below, finds that Respondent would benefit from additional training.

The Court will now turn to the complaints. In a number of cases, the thrust of Judge Bauknight's complaints is that Respondent did not act in a timely fashion, *In re Sandra G. Brown*, 3:17-BK-30221, *In re Heather Kirkland*, 3:17-NK-31678, *In re Roy Taylor*, 3:17-BK-31918, and *In re Melisa Madden*, 3:17-bk-32815.  Respondent argues that he was in full compliance with the

---

[11]  The Court has already addressed Respondent's representation of Webb and the Edingtons, and therefore, will not address the issues again.  The Court notes that there were competency questions raised regarding Respondent's representations of Webb.

law, he is not obligated to respond to a demand from the Trustee, and he had no obligation to attend hearings.

It is unclear why Respondent believes that he is not obligated to attend hearings. Even when there is an agreed order filed, such is not a license to forgo attending hearings. Further, the Court notes that some of the delays in Respondent's cases were short in duration. For instance, in *In re Heather Kirkland* and *In re Roy Taylor*, Respondent announced on August 23 that these debtors did not want to pursue their cases, and their cases were dismissed two weeks later. Respondent's instant response, however, is troubling to the Court. Respondent does not explain why there was a delay—albeit, a slight delay—in the above cases and simply argues that he is not required to respond to motions or attend hearings. His response to motions, however, would have expedited his clients' cases. The Court disagrees with Respondent's position and finds it to be directly contrary to Rule 3.2, which states, "A lawyer shall make reasonable efforts to expedite litigation."

Further, Judge Bauknight issued show cause orders in seven bankruptcy matters, [Doc. 3 at 18], relating to the fees Respondent charged. Judge Bauknight states that at the July 13 hearing, Respondent acknowledged that the accountings were false in that the tasks were recorded contemporaneously, but the time for completing such tasks were not. Judge Bauknight stated that such representations to the court violated Federal Rule of Bankruptcy Procedure 9011(b)(3) and Tennessee Rules of Professional Conduct 3.3, 4.1, and 8.4.

Respondent states that Judge Bauknight's statement (i.e., that Respondent acknowledged that the accountings were false) is a mischaracterization of the record. Respondent explains that Upright Law uses a case management system called "Sales Force" that records each event when it occurs. The case management system does not keep track of the actual time expended on a

33

contemporaneous basis. Respondent states that he uses an in-office, time-tracking system, "Timeslips," that keeps track of the duration of each event billed on a contemporaneous basis. He states that Ryan Galloway ("Galloway") appeared and responded to Judge Bauknight's inquiries regarding the time sheets and that Galloway's spreadsheets were based, in part, on the Timeslips program. Respondent states that if Galloway did not have contemporaneous time records, he recorded the duration of such event as .1 hour, thus providing a conservative estimate.

The Court notes that in his original response to Judge Bauknight, Respondent explained:

> 1. All entries were recorded contemporaneously with their occurrence.
>
> 2. For some tasks, the amount of time required to complete the tasks was recorded contemporaneously with the occurrence of that task. Such entries are noted on the "accounting of services as having been kept contemporaneously."
>
> 3. Some records did not include the amount of time when the event was recorded contemporaneously. For those entries, the amount of time for such event has been reduced to .01 hours.

The Court accepts Respondent's representation, and given his explanation above, the Court does not find that there is clear and convincing evidence that Respondent violated any ethical or other rule with respect to this issue.

Further, in *In re Austin T. Roberts*, No. 3:17-bk-32376, Judge Bauknight states that Respondent filed a document entitled, "Joint Motion for Approval of Stipulated Order Substitution Counsel," wherein he signed in his individual law firm's capacity and on behalf of Upright Law. Judge Bauknight states that he had already withdrawn from Upright Law and was no longer affiliated with Upright Law when he filed the motion.

34

Respondent filed a copy of his motion. [Doc. 9-25]. The motion is signed by Respondent with the caption Upright Law and Schuchardt Law Firm. Respondent explains that when he filed the document, he was no longer a partner with Upright Law, but on the court's docket, he was still counsel of record for Upright Law. Respondent explains that the substitution of counsel was needed to show that he was now appearing in his capacity as an attorney with his own law firm. Respondent explains that while he was no longer a local partner with Upright Law, he still had authorization from Upright Law to file documents on its behalf. Further, Respondent has attached an email from Galloway [Doc. 9-26], requesting that Respondent alter the motion as necessary and file it in Upright Law's cases. Although Respondent should have more fully explained the situation in his motion, given his representation above, the Court does not find clear and concerning evidence that he violated any ethical rules with respect to this issue.

Similarly, with respect to *In re Sandra T. Bennett*, No. 3:17-bk-332047, *In re Jennifer Lynn Annable*, No. 3:17-bk-30681, and *In re Troy and Ashley Sensaboy*, No. 3:17-bk-30753, Respondent inadvertently filed personal identifying information, and in *Annable,* he failed to list amended schedules in the docket entry.[12] Further, in *In re Troy and Ashley Sensaboy*, Respondent improperly filed a motion to waive debtors' appearance (which was later withdrawn), and *In re Lawrence and Martha McFarland*, 3:17-bk-33413, he filed an improper motion. While such conduct tends to show that Respondent was careless, which the Court has addressed above, the Court does not find clear and convincing evidence of a violation of the ethical rules.

Further, in the June 20 show cause order, Judge Bauknight alleged a number of issues with how Respondent handled *In re Perry Lee*, No. 3:17-bk-32158. For instance, she states that the

---

[12] Respondent argues that Annable was the victim of the Trustee's harassment campaign against Upright Law. The Court finds such allegations irrelevant to the issues Judge Bauknight raised in the June 20 show cause order.

Chapter 13 plan did not contain the debtor's signature, the Schedule I did not contain any employment information, and neither document was amended before the debtor's creditor meeting. The meeting had to be adjourned in order to correct these issues, along with other issues. Judge Bauknight states that the Trustee was required to object to confirmation, and then, six days later, Respondent filed an amended Chapter 13 plan, an amended petition, and amended schedules. Judge Bauknight continues that at a hearing on November 15, Respondent attributed the incorrect information reflected in the Schedule 1 due to a software glitch. Judge Bauknight ordered Respondent to produce the original documents with the wet signatures, but the Schedule I included within the originally signed documents was not the same Schedule I filed as part of the docket entry. Judge Bauknight noted that other irregularities existed.

Further, Judge Bauknight stated that it took Respondent three weeks to file amended documents after being on notice that the documents were not correct. In addition, Judge Bauknight stated that at the hearing, Respondent took a position he knew to be contrary with the law, stating that he failed to commit all of debtor's disposable income as required under 11 U.S.C. § 1325(b)(1)(B) to see if the Chapter 13 Trustee "would catch the issue." Finally, Judge Bauknight explained that she was convinced that Respondent lacked a basic understanding concerning 910 claims and the interplay of § 506 in Chapter 13 cases.

Respondent argues that Judge Bauknight's actions of *sua sponte* attacking him have created an appearance that she openly favors Kerney. Respondent accuses Judge Bauknight of aiding and abetting Kerney and states that Judge Bauknight's handling of this matter is improper and patently unethical. He asserts that Judge Bauknight improperly conducted discovery in violation of the Federal Rules of Judicial Conduct and that Judge Bauknight's complaints have no basis in fact or law.

36

As the undersigned has repeatedly emphasized, Respondent's conduct in this case and his instant Response is troubling. For instance, Respondent argues that documents do not have to be perfect when filed and can be amended. The Court agrees with Judge Bauknight's comments:

> [T]his lackadaisical view belies Rule 1008 of the Federal Rules of Bankruptcy Procedure, which requires that "[a]ll petitions, lists, schedules, statements and amendments thereto shall be verified or contain an unsown declaration as provide in 28 U.S.C. § 1746 [allowing for a declaration "under penalty of perjury"]. Such a position also ignores the requirement of the Official Forms that debtors can verify that they "have examined th[e] [document being filed], and . . . declare under penalty of perjury that the information provided is true and correct." Indeed, the failure to provide complete and accurate information may be grounds for the Court to deny discharge to debtors under 11 U.S.C. § 727(a)(4). *See e.g., Premier Cap., LLC v. Crawford (In re Crawford)*, 531 B.R. 275, 306 (Bankr. D. Mass. 2015). The presumption is not that a debtor's statements and schedules are "mostly" accurate; the presumption is that they are entirely accurate, and the ability to amend is to correct honest human errors. And, it is the responsibility of counsel to work closely with debtors to ensure that the statements and schedules are accurate.

[Doc. 3 at 33-34].

Respondent then accuses Judge Bauknight of conducting discovery on behalf of Kerney, citing to the Tennessee Rules of Judicial Conduct. Specifically, Respondent states, "A judge shall not investigate facts in a matter independently." [Doc. 9 at 42] (citing Tennessee Rule of Judicial Conduct 2.9(C)). Contrary to Respondent's assertions, the Court finds that Judge Bauknight's inquiries are appropriate and protect the integrity of the bankruptcy system.

Respondent explains that with respect to the Schedule I lacking employment information, this was the result of the Best Case computer software glitch. Respondent states that when he filed the case, the Best Case program automatically generated and filed a pdf image of the documents and that the pdf image was incorrect because it did not accurately reflect the employment

information from the debtor. The Court has reviewed Respondent's exhibits in support and will accept his representation concerning the software glitch. Specifically, Galloway sent emails to Respondent and the Trustee regarding the "software patch from Best Case." [Doc. 9-21].[13] Accordingly, given the above, the Court declines to find any ethical violations with respect to this issue.

With respect to the signature, Respondent acknowledges, "There was no original wet signature for such document." [Doc. 9 at 43]. He explains as follows:

> As stated above, Best Case had a software problem that caused its program to incorrectly generate pdf images for Schedule I, when the case was filed. In other words, the debtor, Perry Dupree, signed the original correct version of Schedule I. When Schuchardt filed the case, the Best Case program automatically generated and filed a pdf image of the documents. The pdf image that it filed for Schedule I was incorrect, and did not accurately reflect the document that Mr. Dupree signed.

[*Id.*]. Accordingly, given Respondent's representation, the Court declines to find any ethical violations with respect to this issue.

The Court cannot find similarly with respect to Respondent's position on the debtor's disposable income. As summarized above, at the November 15 hearing, Respondent proposed a Chapter 13 plan that failed to commit all of debtors' disposable income as required by 11 U.S.C. § 1325(b)(1)(B). Respondent states that his provision only applies if the trustee objects to the plan.[14] At the hearing before Judge Bauknight, however, Respondent acknowledged that he did

---

[13] The Court notes that in the Respondent's cited emails, the Trustee inquired in another case why the Schedule I was substantially understated. [Doc. 9-21]. A month later, the Trustee inquired about the amended documents. [*Id.*]. Galloway then emailed Respondent stating that they had prepared the amendment together a month ago and that it still had not been filed with the bankruptcy court. [*Id.*].

[14] The Court also notes that Judge Bauknight complained that Respondent lacked a basic understanding concerning 910 claims and the interplay of § 506 in Chapter 13 cases and defended a position that he had not researched, calling into question his competency.

38

not commit all assets in order to see if Kerney "would catch the issue." [Doc. 3 at 22]. The Court finds such conduct to be in violation of Federal Rule of Bankruptcy Procedure 9011(b)(2), which states that counsel must only present "claims, defenses, and other legal contentions [that] are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law" and Rule 3.1, which prohibits the same, and 8.4, which prohibits conduct involving, dishonesty, fraud, deceit, or misrepresentation.

### D.    Respondent's Motion to Vacate Sanction Orders

In his Response, Respondent requests that the Court vacate three sanction orders issued by Judge Bauknight. He also filed a Motion, requesting the same. Specifically, Respondent requests that the Court vacate the following three sanction orders: (1) order entered on August 10, 2017, (2) the Agreed Order entered in seventeen bankruptcy cases; and (3) the order entered on June 10, 2018, imposing sanctions for violating the Agreed Order for representing Webb and Edington.

Respondent cites to Federal Rule of Civil Procedure 60(b), which provides, in relevant part, as follows:

> (b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> > (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; or
> > (6) any other reason that justifies relief.

The Court has already explained that Judge Bauknight's above orders were not improper. Contrary to Respondent's assertions, the Court does not find that Judge Bauknight commenced any proceeding for improper purposes or that Judge Bauknight has an interest in the outcome of the above litigation. Specifically, the August 10 order was issued after Respondent made reckless

statements that Judge Bauknight had engaged in ex parte communications. The Agreed Order was entered upon Respondent's agreement to resolve the show cause orders. Finally, the June 10 order was entered after Judge Bauknight correctly found that Respondent violated the Agreed Order by representing the Edingtons and Webb. Accordingly, the Court finds Respondent's request not well taken, and the undersigned **RECOMMENDS** that Respondent's Motion to Vacate Prior Sanction Orders [**Doc. 11**] be **DENIED**.

### E. Sanctions

Now that the Court has found that Respondent engaged in unethical conduct and violated the Federal Rules of Bankruptcy Procedure and the Tennessee Rules of Professional Conduct, the Court must address whether disciplinary action is warranted. In determining the appropriateness of discipline, the Court considers the nature of the misconduct, Respondent's mental state or intent, the actual or potential injury caused by Respondent's misconduct, and the existence of aggravating and mitigating circumstances. *In re Bell*, 713 F. Supp. 2d 717, 722 (E.D. Tenn. 2010).

The Court notes that with respect to a number of the violations set forth above, Respondent fails to admit any wrongdoing. "One of the purposes of discipline is to impress upon the disciplined attorney the importance of bringing his or her conduct in line with the standards and expectations of the bar of the Eastern District of Tennessee." *Id.* at 871-72. As emphasized above, Respondent argues that he was justified in his actions, and he repeats his accusations regarding ex parte statements. Respondent's "lack of remorse weighs heavily against him in this proceeding." *Id.* at 872. Further, Respondent's "substantial experience in the practice of law is an aggravating factor because it indicates he should be well aware of applicable expectations and standards." *Id.* Respondent received his law degree in 1993, and therefore, his substantial experience is an aggravating factor. The Court has also considered the burden that Respondent placed on the

bankruptcy court—that is, the court was regularly issuing show cause orders, conducting hearings so Respondent could explain deficiencies, and correcting Respondent's errors. The Court finds this to be an aggravating factor.

Finally, the Court notes that Judge Bauknight utilized progressive discipline against Respondent to no avail. *In re Cowan*, 620 F. Supp. 2d at 872-73 ("Such an extensive pattern of misconduct indicates a reprimand or warning would be insufficient to compel . . . to rectify his behavior."). She sanctioned him at the August 10 hearing for making statements regarding ex parte communications with reckless disregard as to their truth by requiring him to purchase transcripts and self-report to the Board. She then issued show cause orders in January 2018 for a number of issues in his cases. Respondent entered into an Agreed Order to resolve the issues raised in the show cause orders, only to violate his conditions a few months later. She extended the moratorium period, sanctioned him $2,000, and required him to compensate Webb. During this time, he repeatedly questioned her impartiality and continued his reckless statements. The Court does not find reprimanding Respondent would be sufficient in this case.

The Court, however, has also considered mitigating factors. Specifically, the Court has reviewed Respondent's background and his statement that within twenty-five (25) years of practicing, he has never been investigated by the Board or received a client complaint. The Court finds that Respondent's clean record is a mitigating factor in this case. Weighing the aggravating and mitigating factors, the Court recommends that Respondent be disciplined.

"In determining the appropriate degree of discipline, the Court also compares Respondent's conduct to that of other attorneys who have been subjected to discipline by the Court." *In re Justice,* No. 1:11-MC-3, 2012 WL 2374677, at *30 (E.D. Tenn. June 22, 2012), *aff'd*, 525 F. App'x 291 (6th Cir. 2013). For instance, one attorney was suspended for a period of seven years due to

his failure to obey a direct court order and other misconduct, including previous misconduct. *In re Moncier*, 550 F. Supp. 2d 768 (E.D. Tenn. 2008). In another case, the Court suspended an attorney for six months because he represented that he charged his clients $750 when he was really charging $1,000 and he failed to file clients' cases in a timely manner, although such conduct was unintentional. *In re Cowan*, 620 F. Supp. at 868. Further, in another case, the Court publicly reprimanded an attorney who made misrepresentations to the Court and ordered him to speak at law schools and professional organizations on ethics. *In re Bell*, 713 F. Supp. 2d 717, 718 (E.D. Tenn. 2010). The attorney in *Bell* was punished criminally for that action and was remorseful for the misrepresentation. *Id.* Finally, in another case, the Court suspended an attorney for six months when he submitted false attributions of work. *In re Justice*, 2012 WL 2374677, at *30.

In considering the above, along with the circumstances in this case, the Court recommends the following disciplinary action: (1) Respondent be reprimanded for his accusations against Judge Bauknight; (2) Respondent be suspended from the practice of law in the United States District Court for the Eastern District of Tennessee (all divisions and all units, including the Bankruptcy Court for a period of two years); (3) at the expiration of one year, Respondent be allowed to apply to the Chief Judge for early reinstatement, which application must include the following:

> (a) Evidence by clear and convincing proof that Respondent has taken significant and meaningful steps to bring his practice and behavior in court up to the standards of ethics, civility, professionalism, and respect for the institutional role of the court that complies with the expectations and standards of members of the bar of the Eastern District of Tennessee;
>
> (b) Copy of a letter of apology addressed to Judge Bauknight wherein Respondent admits his wrongful, unethical, and unprofessional conduct, makes an apology for the conduct, and makes a commitment he will not engage in such wrongful, unethical, and unprofessional conduct in the future. The sincerity of Respondent as expressed in this letter

42

will have a bearing on whether the court determines
Respondent has attained the fitness necessary for him to be
reinstated;

(c) A certification that he has not been accused of any other
unethical or unprofessional conduct of any type and by any
attorney, client, body, board, judge, or entity;

(d) A certification that no official body or judge or court has
taken action of any type against him for any unethical or
unprofessional conduct of any type;

(e) A commitment to the Chief Judge that he understands,
appreciates, and accepts the necessity of civility and
professionalism in the practice of law by all attorneys
admitted to practice in this district and that he has adopted
these required principles into his practice and will conduct
himself at all times with civility and professionalism.

Finally, when Respondent is eligible for reinstatement, the Court recommends that
Respondent be placed in a probationary status for the remaining time of his suspension and that
the terms and condition of his probationary status be decided at such time as Respondent applies
for readmission but should include a requirement that he receive additional training in legal
education and professionalism.

## V. CONCLUSION

Accordingly, for the reasons stated above, the Court **RECOMMENDS**[15] that Respondent be found to have violated the Federal Rules of Bankruptcy Procedure and the Tennessee Rules of Professional Conduct and that he be disciplined as forth above. The Court further **RECOMMENDS** that Respondent's Motion to Vacate Prior Sanction Orders [**Doc. 11**] be **DENIED**.

Respectfully submitted,

Bruce Guyton

United States Magistrate Judge

---

[15] Pursuant to Local Rule, 83.7(j)(2), "The respondent shall have 14 days from the date of service of the recommendation in which in which to file with the Clerk a written response to the recommendation." Further, the "response shall not exceed 25 typewritten pages and shall state concisely any inaccuracies, errors or omissions which warrant a disposition other than that recommended." E.D. L.R. 83.7(j)(2).

44